May it please the Court, and good morning. Under this insurance contract, Continental agreed to pay for losses, including defense costs, for a claim resulting from a wrongful act. It is plain on this record that Continental breached that contract when it refused to defend the 2010 lawsuit that was tendered to, unless Continental could prove two things. One, that the 2006 claim, the 2006 lawsuit, was the result of a wrongful act. And two, that the wrongful act alleged in the 2006 lawsuit was interrelated within the meaning of the policy with the wrongful act alleged in the 2010 lawsuit. Miller submits that we only have to win on one of those points. Continental has to win on both of those points to exclude coverage. And we submit that on this record, that Continental did not prevail on either one of those issues. So let me start first with the wrongful act in the 2006 lawsuit. Continental argued, and the lower court found, that the 2006 lawsuit alleged a wrongful act. Respectfully, that was not the proper analysis. Proper analysis was that the 2006 lawsuit was for a breach of contract. The definition of wrongful act in this Continental policy does not include breach of contract. We submit the contract language of the policy is unambiguous. It doesn't say breach of contract. And therefore, when the insured gets sued for breach of contract, it's not being sued on a claim for a wrongful act. If Miller had paid IBG the finder's fee, would there have been a 2010 action at all? I don't know, because I don't know whether they would have had the, I don't know whether they would have had that action at all. All right, well, put it another way. Can you identify any claim in the 2010 action that didn't depend on the 2006 judgment? No. But the relationship under the contract of insurance that Continental issued in 2010 is not the interrelationship of the lawsuits where the claims are on. It's the interrelationship of the wrongful acts. And that's where the insurance company went off the track, and respectfully, that's where the district court went off the track. I might have misunderstood you. You said there was nothing but a breach of contract suit in 2006, but there were causes of action, tortious interference, and statutory conspiracy, in addition to a breach of contract. There were, Your Honor, and I think I had said at its core it was a breach of contract case. All of those counts were eliminated, and respectfully, I think the vantage point for this case, the case we're in today, is in 2010, what should the insurance company have looked at? And the fact is, the 2006 complaint did have other counts. It had tortious interference with its own contract, which doesn't state a cause of action. And it seems to us the insurance company cannot rely on the fact that the plaintiff in 2006 pled things that aren't in fact torts, or a conspiracy to breach your own contract. Our insurance company in 2010 should not be allowed to rely on that kind of pleading in a 2006 case as a reason to deny coverage for a 2010 case that is clearly covered by the scope of the policy. So Your Honor is correct. Those allegations were in there, but for this case, the vantage point seems to me is in 2010, was there a potentiality of covering? And the insurance company relied on the way the plaintiff in 2006 pleaded, including causes of action that don't exist in the law, and said, oh look, there's a tort count in there. It wasn't a tort case. It was an express written contract. Would you acknowledge that a transfer to avoid a judgment is a wrongful act? Yes, that's the 2010 lawsuit. That is the wrongful act. I don't think there's any dispute, Your Honor, that the 2010 lawsuit states a cause, a claim for a wrongful act. That occurred in 2008. That's what the 2010 lawsuit is. See, I think part of the problem with the analysis here is it's not the question of the relationship of the two lawsuits. It's the relationship between the wrongful acts. And even if the 2006 case is deemed to include a wrongful act, that wrongful act was breaching the 2002 contract in 2004. The 2010 lawsuit, I know there's a lot of years flying by, the 2010 lawsuit was for a wrongful act that supposedly occurred in 2008. And the lower court and the insurance company never said, what are the interrelationship between those wrongful acts? Not between the lawsuits, but between the wrongful acts. Where are the facts in common? Where are the circumstances in common? Where are the documents in common? The meetings in common? Where is the commonality of the facts, which is the definition in the policy? It's the wrongful act, not the claim. And the insurance company's analysis and the district court's analysis kept saying, are the lawsuits related? I'll acknowledge the lawsuits are related. Of course they're related. It's the same plaintiff. There are some common parties. But the question in the insurance contract that Continental wrote is, are there interrelated wrongful acts? And then we look at the facts and circumstances. And there is no dispute that the 2006 lawsuit alleged wrongful acts that occurred in 2004. The 2010 lawsuit alleged wrongful acts that occurred in 2008. So what links these two, even as wrongful acts? It's something that the insurance company created in 2010, namely the, quote, common scheme. I mean, I read that 2010 complaint again last night at my kitchen table. There's no reference in there to common scheme. That is not what the 2010 suit. It's completely different from most of the cases cited by the insurance company, where there were allegations of a common scheme. The plaintiff in the 2010 lawsuit didn't allege this was a common scheme. They said, we're trying to collect the judgment. Not that it was some sort of conspiracy or common scheme or like these embezzlement cases or any of these other ones. And respectfully, in 2010, our insurance company should not be sifting through prior lawsuits to see if they can tease out a thread of commonality in order to deny coverage for what is clearly in 2010 a coverable claim. Well, it's hardly that. It's hardly sifting through prior lawsuits to tease out a former, to tease out a claim. You have a wrongful transfer, if there had not been the wrongful, there's a but-for causation, which is one of the things that the district court relied on. And I think that the court was wrong, because I think it was looking at the- I do understand. I was just taking issue with your characterization. I appreciate that, Your Honor. But the but-for causation that I think the lower court looked at is there wouldn't be a second lawsuit but for the first lawsuit. That's not the insurance test here. The insurance test here is, are the wrongful acts in case one interrelated with the wrongful acts in case two? And the fact pattern is undisputed. There isn't an overlap. Well, the insurance policy, as I recall, uses the word claim, and it's defined as a civil proceeding. So any claim under the policy would be a claim for wrongful conduct, wouldn't it? Well, the policy says the insurer shall pay for loss resulting from any claim for a wrongful act. Our submission is the 2006 lawsuit was not a claim for a wrongful act within the meaning of this policy. So, again, it's holding the time frame straight. So in 2010, no dispute, I think, properly reported, it's a claim for a wrongful act in 2010. The insurance company then says, under our definition in 2010 of a wrongful act, it was the 2006 lawsuit a claim for a wrongful act. My submission to you is it was not a claim for a wrongful act because wrongful act in this policy doesn't say breach of contract, and it's their policy. They know how to write breach of contract. They have an exclusion that says we're not going to pay losses for claims for breach of contract. Well, it says that any interrelated wrongful acts, I mean, any wrongful acts which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, or event. And wasn't there, it's hard for me to, it seems almost intuitive to me that a second action to recover on a judgment obtained in a prior action on the ground that the defendant fraudulently transferred assets to defeat that recovery is an interrelated wrongful act. Respectfully, it's not, because the question is not whether the claims are interrelated. It's whether the wrongful acts are interrelated. And the wrongful act in suit one is a breach of contract, plus maybe related tort counts, but essentially a breach of contract. The wrongful act in suit two is fraudulent, alleged fraudulent transfers and conveyances. What is the common fact between those two? The only thing that has now linked them is the insurance company's argument in 2010 that we should view this all as one big common scheme, which is not the position the plaintiffs in the New Jersey case took. That was not, it distinguishes the Kilcher case and other cases where the parties seeking coverage themselves alleged a common scheme. This is a common scheme that the insurance company, and respectfully, teased out of the file. And moreover, the second case, the 2010 lawsuit, while it says it's an ancillary lawsuit, was not in fact a collection action. It didn't seek to impose on the defendants in the second case liability for the judgment. It's not a veil-piercing case. It's not an alter ego case. It's not a case where you could say, in case two, we are trying to impose the liability found in case one. Case two, 2010 case, is a disgorgement case. It's a fraudulent transfer case. It's a, you officers received money you shouldn't have received. You should pay it back into the kitty, and out of that we're going to get paid. They didn't seek to transfer the judgment liability from case one to the defendants in case two. So it is very different than, I think, the case your honor is positing, which is that case two is sort of a continuation of case one. Tell me what's wrong with this phrase. An alleged scheme involving the same claimant, the same fee commission, the same contract, and the same real estate transaction. Is that true or not? It's not true, your honor, respectfully, and I think the court was wrong about that. Clearly the same plaintiff. Tell me why it's wrong. The same plaintiff in two cases. The wrongful act in case one is, you breached my contract. I had a written contract with you, you breached the contract. You paid somebody else a commission, you breached the contract with me. Case two is, you officers dipped into the corporate- Would you mind, it would help me a lot if you responded directly to his question with respect to the facts, and maybe you are, and I just wasn't- I was trying to- Okay, well thank you. And I think you were quoting from the judge's opinion, or maybe from the brief, the appellant's brief. It is clearly the same plaintiff between the two lawsuits. It's not the same real estate transaction. The first case is a commission under a written contract. The second case, the alleged wrongful act, was that the corporate officers had taken money out of the partnership, had taken money out of the corporate treasury to pay themselves in a way that was detrimental to creditors. It's not about a real estate transaction, it's not about a commission. Are there related- I mean, does the plaintiff in the second suit go through the history of everything? Sure they do. But the allegations, the claims for relief in case two were, disgorge the money that you insiders improperly took. But back to Judge Duncan's question, the second action arose because your clients were trying to avoid paying a $3 million judgment. Isn't that true? It was alleged. It was obviously, as your Honor knows, found not to be the case, but that's what the allegation was. But unlike a case where, in the second case, you were trying to extend the liability for the judgment to other people, you're an alter ego, you're a veil-piercing, those kind of cases, where you can say the first case is a necessary part of case two, respectfully, the wrongful act, which is our inquiry here, they're not the same pattern, they're not the same thing. Let me try one more time, because I really didn't understand your response to Judge Floyd. The district court said that the, here, the adversary, I didn't understand what you were objecting to in the list of his checklist. The 2006 adversary proceeding and the 2010 lawsuit arose out of a common scheme that was directed at a specific entity, IBG, is that correct? No. It involved a single contract, the fee agreement, you know, that's not correct. Not in the second case. It arose out of the same real estate transaction, the Haymount Project. Again, I disagree with the characterization, the judge- No, is it not, you're saying it's not correct? It doesn't- I'm saying the 2010 lawsuit does not allege a wrongful act relating to the real estate transaction. Please, just stay with me for just a minute. The core, at its core, it was about the real estate transaction involved in the Haymount Project. The facts are that it arises out of the Haymount Project? Yes. First- It arises, at its core, I'm really just trying to establish a fact, and it seems pretty straightforward that the underpinning of this was the transaction involving the Haymount Project. You don't agree with that? I'm not disagreeing with your honor that the underlying, the reason the plaintiff sued in both cases was related to the transaction of the IBG contract. What I'm quarreling with your honor is that the relationship between the two lawsuits is the question. It's the relationship between the acts that is- Okay, and that wasn't, and I'm really trying to make it very simple so that we don't get into a discussion about ancillary parts of it, but the real estate transaction is at the core. Oh, yes. And the outcome is precluding IBG's monetary recovery for its involvement in the Haymount Project. I disagree with that, yes. Thank you. So, if I ask you whether you agree or disagree, essentially what's going on here is the claimant continues to seek vindication of its rights under the same contract related to the same real estate project. Do you just disagree with that? I disagree with that. That's what the two- Can you just tell me why? Yes. Why do you disagree with that? Because the second lawsuit sought relief from people who were not on the contract, sought a disgorgement of money that they received. The wrongful act allegedly occurred in 2008, four years after the contract was breached with IBG. There was, again, the scheme or motive question, I think your honor's question goes to, was not embedded in the case in 2006 or in 2010 in the lawsuit that the plaintiff brought then, that the trustee brought then. It was really created by the insurance company when asked to defend the 2010 lawsuit. In that sense, it's very distinguishable from the cases involving common schemes. Thank you. Thank you.  Thank you, your honor. May it please the court, my name is Richard Simpson. I represent Continental Casualty Company. This case is properly framed in terms of two questions. Was there a wrongful act alleged in the 2006 lawsuit? And if so, was wrongful acts interrelated under the policy definition with the wrongful acts alleged in the 2010 lawsuit? Judge Hazel got it exactly correct on both points. On the 2006 lawsuit, it simply is not possible, fairly, to characterize that as a simple breach of contract case. As the questioning of my opposing counsel showed, that case includes causes of action for tortious interference, for common law conspiracy, and for statutory conspiracies. Does it make any difference to you that the award was simply on the breach of contract claim and not the others? No, because the policy is based on actual or alleged wrongful acts. And so the question is, what was alleged? And how does that fall in terms of interrelated or not? The merits of the case do not matter. It can be a meritorious claim, it can be an unmeritorious claim. That does not determine whether the cases and the acts are interrelated. No, but if you just, people plead many ways, but don't you have to look at, and this word has been used quite a bit in this questioning, is that the core of the case was a breach of contract, was it not? The core of the case, the other thing is, good reason they went away, because it wasn't about those tortious interference and those ancillary things. It was about a breach of contract, wasn't it? At the core, there was a breach of contract. There were also other claims. Let me say two things about that, Your Honor. Imagine, and basically the argument that council has made, that Miller Development has made in its brief and here today, is that the causes of action, the tort causes of action, were not meritorious. And in fact, if you look at the brief, they go so far as to argue that a claim might have been stated under Virginia law for conspiracy, but New Jersey law applied. Those all go to whether the claim against the individuals were meritorious. And I note individuals. They weren't parties to the contract. Question, Your Honor? They're not parties to the contract. They weren't sued on the contract. They're only sued for tort. I think this is the key. And they tortially interfere with what? The contract. With the contract. The contract, the same contract. And? What's the other tort claim, Jim? Two conspiracy claims. And conspiracy, they conspired to do what? They conspired to deny IBG the ability to collect the fee it was owed. Under the contract. Under the contract. So how is that, how do you get away from this? That's the epicenter of the whole matter, is the contract. Well, I'll come back to the contract, because even if it were just a- What do you mean, you don't come back? You're right still here with my question. Oh, I, yes, yes. All right, I'll answer it directly. If this were only a breach of contract case against the entity and there was nothing else, it would still be a wrongful act. And it would still be related to the 2010 case. The parties are different. What's that? The parties are different. They are not identical, but some of them are the same. There are insured, the key is there are insureds. There are insureds who are defendants in the first case, and the same insureds are defendants in the second case. And if it were only a breach of contract case, that would still, and if those individuals were not defendants, as they are, there would still be a wrongful act. The definition of wrongful act is about as broad as it can be. It's any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty. That includes a breach of contract. And the fact that there is a breach of- Which one includes a breach of contract? The definition of wrongful act. Which one? Which one? I would say breach of duty. A breach of duty? Yes. You have a duty under the contract. Duty is normally expressed in terms of some duty that arises out of a tort, doesn't it? You have a duty? Well, you have a duty under a contract, but your honor, I think the proof of that, the proof, so to speak, of the pudding, is exactly the provision my opposing counsel referred to. And that is that the policy has a breach of contract exclusion. It says we won't cover claims that are just for breach of contract. That provision would be entirely meaningless and entirely superfluous if a breach of contract were not a wrongful act. Because the way the policy works, like every policy, is you have an insuring agreement. And then if a claim doesn't come within the insuring agreement, there's no coverage. If it does come within the insuring agreement, you look at the exclusions. And so if a breach of contract doesn't come in the insuring agreement, if it's not a wrongful act, then you don't need a breach of contract exclusion. You need the exclusion because breach of contract falls within the wrongful act definition. But I'm sorry, I don't want to interrupt you. Let me finish the thought. And this, Judge Greger, I think goes to your point about those other claims against the individuals not having merit. Coverage isn't determined by merit. Imagine it's 2006, and Miller Development and its insureds tender that 2006 lawsuit to whoever their insurance company is then. It wasn't us if they had one. And that insurance company looks at the claim and says, you know, there's a claim against the individual. They're alleged to have committed torts. They've alleged to have engaged in a conspiracy. But you know what? We don't have to cover that because they're not merit. They don't have merit. That would be bad faith by an insurance company. If that claim were tendered, they could not deny coverage for it because it didn't have merit. And so to say that the claim that those acts shouldn't be considered merely because they didn't have merit really turns the analysis on its head. It really doesn't work. And so your position is, we make that determination about, will it provide coverage based on what was alleged and not what was proven? Exactly, Your Honor. Exactly, Your Honor. The first case. Otherwise, it would have been a gratuitous thing on your part if it were just a breach of contract case. If it were just a breach of contract case, we'd have these at the same place in terms of the result because it would still involve interrelated wrongful acts. But you don't have to go there to decide this case because it wasn't a plain and simple breach of contract case. The contract, sure, was at the center of it. But there were tort claims against individual insured who weren't parties to the contract. They're not defendants in the breach of contract counts. They couldn't be defendants in the breach of contract counts. There is no way to read that lawsuit as anything other than asserting tort claims against individual insurers. I do have a question. I don't want to stop you before you get to the end of your thought. No, Your Honor. If the 2010 lawsuit had been successful, who would have received the recovery? Wouldn't it have been the bankruptcy estate? Yes. Not directly IBG? So it wouldn't have gone directly to benefit the party in 2006? No, that case was also by the bankruptcy trustee. Both cases? But it doesn't go back to the party who was, for lack of a better word, wronged the first time. Well, it does in the sense that the bankruptcy trustee for IBG is the plaintiff in both cases. I understand what you're saying. My point, though, is it goes into a bigger pot, doesn't it? Oh, I understand your point. Yes. It would be for the benefit of creditors. I'm sorry. I'm sorry. Including IBG, and Judge Hazel actually asked about this in the oral argument in the district court. If you look at the 2010 complaint, it focuses specifically on the fraudulent conveyance count, on the effort, the conspiracy, which I think a conspiracy and a scheme are the same thing, the conspiracy to deprive IBG of its commission. So it's not a general something about creditors. It is very specific in terms of intent to defraud IBG. So that's the wrongful acts analysis. And as I said, the bottom line is that whatever the center may be and whatever the merit may be, you can't read that 2006 lawsuit as being anything other than including claims for wrongful acts, tort claims against individual insureds. And if it were tended to an insurance company, they would have to treat it as that. They could not say, oh, this is a breach of contract claim. Take care of yourself. They'd have to provide the coverage unless there were some other reason not to. So then the question becomes, are the acts alleged in the 2006 lawsuit interrelated with those in the 2010? And as Judge Hazel aptly put it, it's hard to think of a closer connection. First of all, the test to be applied is specified in the policy. And many policies now include definition of related acts or interrelated acts precisely because there was a split of authority when the term was undefined about how broad it was. And so this policy, like many, says in substance, apply the broadest reasonable reading of the term related. If they're connected by any common facts, circumstance, transaction, or event, treat them as related. And so that's the test to apply. Then you look at the facts of the case. And I must respectfully disagree with my colleague. This is, on the face of the complaints, an ongoing scheme to deprive IBG of its commission. Alleged. If you look at the first case, it alleges that the individuals who are also defendants in the second case were conspiring to deprive IBG of its fee. If you look at the second case, they allege conspiracy again, an ongoing conspiracy. And the allegation is, to deprive us of our fee, they also transferred assets. They made fraudulent conveyances. Well, how do you distinguish your position from the ace American case, where the district court held that a second lawsuit based on similar wrongful business practices, but differing in time and factual specifics from the original wrongful acts, were not interrelated as defined by the policy? Yes, Your Honor. First, it's a different definition of related. But the result would be the same in both policies on these facts. The way I distinguish it is the ace case, and Judge Blake in that case laid out very well what the allegations were. They were very broad allegations about general business practices in a Senate report and in an earlier class action. And then many years later, you have attorney-in-general investigations that also involve general business practices, not the specifics you have here. And what Judge Blake said was that if you called these related, then pretty much any case that challenged a business practice of this insured would be related. And the way I would think about it is the analogy would be if, in this case, Continental were saying Miller Development and the other insureds had a general practice of trying to skip out on contractual duties and finder's fees. And as a result, a first case involving Contract X is related to a later case involving Contract Y with different parties and different allegations because of their general business practice. That's what ACE is about, very broad general business practices. If you look here, and respectfully, again, I must disagree with my colleague and suggest the court look at the two complaints because Judge Hazel had it exactly right in terms of it being a common scheme on the face of the complaints. And what do they have in common? First of all, motive. It's clear on the face of both complaints that what's being alleged is an ongoing effort to avoid paying something that is owed. That's the finder's fee owed to IBG. The first alleges a conspiracy. The second alleges a continued conspiracy. But it's different, though, isn't it? For example, in the first case, it's about you made an agreement with me to pay a finder's fee. You didn't pay it. But given your sort of ancillary tort claims, you tortiously interfered so that my contract would not be fulfilled and I wouldn't get paid. You conspired so that I would not get paid. But there's no corpus to that because they didn't get paid. It wasn't like there was earmarked money for them. The 10 case deals with hiding or fraudulent conveyances of general funds. Well, isn't that different? For example, does it make any difference where these funds came from? The question is, and that is, they may be doing that, but that doesn't mean that there aren't funds available for paying my agreement. Isn't that a different thing? Just generally taking money away, you're reducing the treasury. That's maybe a conspiracy or whatever tort claim. But the other deals with you haven't paid me the money. Your Honor, there are differences between the two. And all of the cases in these areas say, of course there are differences between two cases you're looking at because you wouldn't get to a interrelated analysis unless they were different. If they were identical, then it's the same claim. And the cases say, under this policy language, and Judge Hazel noted this, you don't look at the differences. You look, is there a commonality? What's the commonality here? First of all, the goal, as alleged, and the alleged conspiracy in both cases is to avoid paying this fee. Then you look at the other common, and note the test is any common fact, circumstance, transaction, event, or decision. It's the same plaintiff in both cases, exactly the same plaintiff. It's the same fee contract in both cases. It's the same real estate venture in both cases. It's the same alleged injury in both cases. And I note the first case didn't just seek the finder's fee. It also alleged consequential damages, lost profits of $10 million. Same injuries sought in both cases. It's the same scheme, as I said, to avoid payment. It's directed at exactly the same entity, IBG. It's not like a general business practice where we're trying to, the second case involves some other entity. The defenders overlap in the defendants. At least three of the defendants are the same. And there are insureds in both cases. On its face, the very first couple of paragraphs of the 2010 case, it says it's ancillary to the 2006 case in an effort to collect the judgment. And then it goes on to allege that even before we got that judgment, there was a conspiracy continuing to avoid paying it. It was, the second case was designated in the district court as related and assigned to the same judge. And there's no definition there, but what it is, and insurance policies are read as common sense, who would think that if that second case were filed and the district court had a related case rule, that it wouldn't go to the same judge? Because under any reasonable definition of related, they're related. So for all of those reasons, this case follows I-4-3-RI for many of the recent decisions, especially when you have this broad policy language. Do you have any support for your proposition that a breach of contract is a breach of duty? Other than comments you're... I believe we cited one case in our brief, but Your Honor, I'm not thinking of a case right now. What I would focus on is the fact that there is the language, but then the fact there's an exclusion for breach of contract. And that's a common insurance analysis. You see it all the time, for example, in business enterprise cases, where you have a professional who's performing legal services or some other professional service and also business. If it doesn't fall in the insuring agreement, there's no need for an exclusion. But the key thing, Your Honor, is you don't have to go there. It doesn't matter whether breach of contract is a wrongful act, because you definitely have alleged wrongful act, tort wrongful acts against insureds in that case. And if it were tendered for coverage... But we disagree with you that that was not the core of the case. Your Honor, I don't think it matters where it's the core of the case. The question is, are there wrongful acts alleged that are interrelated? And so I would respectfully disagree. I think that the first lawsuit on its face asserts tort claims. And whether they're meritless or not doesn't have anything to do with whether they're related to later tort claims, which also turned out to be meritless. You can take the case under a reservation of rights, the first case under a reservation of rights. If it's a breach, truly a breach of contract case, then we don't have to... Did we or... Well, Continental didn't have a policy in place, and so it wasn't tendered to us. And the record reflects it wasn't tendered to anyone. And so I don't know whether there was a policy and they didn't tender it or they didn't have a policy yet. But I would say this, if an insurance company, if we're to deny coverage for that first case, because the tort claims were meritless, because they could be successfully defended, I don't often say insurance companies are acting in bad faith. That would be bad faith. That case alleged tort claims against individuals. And if they were insured and there was no other policy provision that applied, you would need to provide coverage for that. The other thing I would say is this, it's not a pro-insurer position that this related claim issue sometimes works to the benefit of the insured, sometimes to the benefit of the insurer. This court's Atlantic Permanent case is one in which the insured got the benefit of one deductible instead of 63 deductibles because the claims were related. Counsel, would you agree that in the 2010 case, you wouldn't have to prove that there was a contract breach and you could still get judgment against the defendant on that theory that they conspired to reduce the funds or otherwise fraudulently convey? Would you agree that you don't have to prove that you had a breach of contract? Well, no, Your Honor, because the whole predicate of the second case was they had a judgment for breach of contract among other things that wasn't. But you don't need that, do you? Can't you prove that someone fraudulently conveyed and moved funds out inappropriately? Why do you have to show that you had a breach of contract? Well, the damages may be a question, obviously, what your damages might be, in a sense, but do you have to prove there was a breach of contract? Now, may I answer the question? I see my- Yeah, I asked you, you can. Yes, the second case, the fraudulent conveyance wasn't a general fraudulent conveyance. They were trying to move money in order to generally prejudice creditors. And as I said, Judge Hazel asked this question. It very specifically alleges that the whole point of the alleged conspiracy was to deprive IBG of a fee to which it was entitled under its contract and for which it had a judgment. And so that second case, without the first judgment, that second case on its face does not fly. And I would note, the second case was meritless also. Motive is not an element of wrongful act, is it? Motive is not an element. Motive- Or intent to move the funds. They may have alleged a motive was related to that, but that's not required, it's not an element. Intent under the fraudulent conveyance, intent to defraud, in essence, is an element of the claims asserted in that second case. And the allegation was very- But the general creditors, other creditors, like you said, didn't have to be that contract. Well, I mean, in theory, there might be that kind of claim. That wasn't this case. This case, the 2010 complaint, on its face, says the intent of moving the money was to deprive IBG of its fee that it was entitled to under its contract and for which it had a judgment. And as I said, if you compare this case to Kilcher, to Bryan Brothers, to Howard Hoffman, any of those cases, this falls off. Of course, there are, there are so many connections. Thank you. Thank you. Kennan, you reserved a few minutes. Just respond to three points. Number one, I respectfully disagree with my colleague here. The plain language of the contract and its definition of wrongful act does not say breach of contract. And everybody knows what breach of contract means. And it does not make textual sense to say on page one, it's actually appendix page 57, page one of the contract, of the entity page, wrongful act means breach of contract. And literally on page three, say, but we don't cover breach of contract. That does not make sense. The concepts in wrongful act involve wrongfulness, errors, misstatements, neglect. In fact, the phrase says neglect or breach of duty, not just breach of duty. But he said, he'll give you that one. And you still got a problem because clearly the 2006 suit did allege tort claim. And I think there's two responses to that, your honor. Number one is the point I think your honor was making, which was, you should look at the substance of it. And we discussed that earlier. But number two is a slightly different point in this case, which is the following. We are not talking about, should Continental have covered the 2006 case. We're saying in 2010, when it's insured shows up at its door and says, here's a new lawsuit, and they know what has happened in the first lawsuit, should we allow the insurance company to say, well, it was originally pled as a tort case, et cetera. By 2010, there was no dispute as to what that first lawsuit, it alleged breach of contract. All the other stuff had been stripped out. All the other elements were gone. And yet they're saying you should allow them to treat this as if the 2006 lawsuit were being first tendered to them with a reservation of rights or something. So your argument is that we shouldn't be stuck with the four corners of the first suit when we have been now better advised based on that litigation and the results and being parboiled down to what it was, a breach of contract. Just as in any insurance case, you're allowed to look outside the four corners to see if there's coverage. Could I ask what your authority is for that proposition? And also, I guess, do you have authority for the proposition that we don't look at the labels that the parties themselves give to their litigation? There are a number of cases, and I'm sorry, I cannot pull the name out right now, but we decided some cases under Maryland law that you look at the substance of the case, not the way it's styled. We don't look at the label of it, we look at what the substance of it is, and that's- Not the allegations. That you can look at the allegations, but you're looking at the substance of it so that if somebody, and again, this is my point when we're looking at the 2010 vantage point. At that point, we know what the substance of the first suit is. We're not wondering, is it gonna be proved that or not? It's the judgment for breach of contract. And so, the label that the original plaintiff happened to stick on it or claims it didn't go anywhere, I don't think at 2010, it's not fair to the insured under the terms of the 2010 policy to allow the insurance company to get the benefit of earlier allegations once better facts are known and once it is clear that first case was a breach of contract. Thank you. Thank you. We will come down, greet counsel, then proceed to our next case.
judges: Roger L. Gregory, Allyson K. Duncan, Henry F. Floyd